UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID L. MCLEES,<br><br>       Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>       Defendant. | Case No. 3:13-cv-05218 -BHS-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 28, 2014 |

  Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

FACTUAL AND PROCEDURAL HISTORY

  On May 6, 2011, plaintiff filed applications for disability insurance benefits and SSI benefits, alleging disability as of November 15, 2006, due to chronic left ankle pain, nerve damage to the left ankle, thoughts of self-mutilation, difficulty concentrating, black outs,

REPORT AND RECOMMENDATION - 1

psychotic episodes, left arm pain, hip pain, lower back pain, and depression. *See* Administrative Record ("AR") 89. Both applications were denied upon initial administrative review and on reconsideration. *See* AR 87-144. A hearing was held before an administrative law judge ("ALJ") on June 27, 2012, at which plaintiff, represented by counsel, appeared and testified, as did his brother, Michael McLees, and a vocational expert. *See* AR 10. At the hearing, plaintiff amended the alleged disability onset date to November 1, 2008. *Id.*

On September 20, 2012, the ALJ issued a decision in which plaintiff was determined to be not disabled. *See* AR 10-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 8, 2013, making the ALJ's decision defendant's final decision. *See* AR 1-5; *see also* 20 C.F.R. §§ 404.981, 416.1481. On April 1, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. *See* ECF #3. The administrative record was filed with the Court on June 21, 2013. *See* ECF #11. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for payment of benefits because the ALJ erred: (1) in discounting plaintiff's credibility; and (2) in failing to incorporate into the residual functional capacity ("RFC") limitations identified by the lay witness, while claiming to agree with him.[1] *See* ECF #14. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

---

[1] Plaintiff also contends the ALJ erred by failing to incorporate into the RFC the limitation that he must intermittently elevate his left leg throughout the day. ECF #14 at 13. This argument is encompassed within plaintiff's other assignments of error and will not be considered separately.

REPORT AND RECOMMENDATION - 2

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F. Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." (citing *Brawner v. Sec of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987))).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).[2]

---

[2] As the Ninth Circuit has further explained:

I.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

---

. . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

*Sorenson*, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *See id.*

The parties dispute whether the ALJ provided clear and convincing reasons supported by substantial evidence for discounting the credibility of plaintiff's statements concerning the degree of limitation caused by his impairments. *See* ECF #14 at 2-11, #16 at 2-7. The ALJ gave a number of reasons for doing so. AR 16-24. First, the ALJ found that there was insufficient evidence in the clinical record of plaintiff's claimed need to lie down and elevate his left foot because plaintiff did not tell his treating or examining doctors about this limitation. AR 21-22. Plaintiff, however, told examining doctor James Parker, M.D., that he needed to elevate his foot, AR 382, and reports of swelling in his lower left extremity appears throughout the record, AR 366 (reported intermittent edema to Patty Jordan, ARNP), 683 (report of ankle swelling in Army medical report), 1067 (reported swelling to Freida Eng, M.D.), 1204 (reported ankle swelling to Terilee Wingate, Ph.D.), 1240 (reported ankle swelling to Leslie Pilon, C.H.C.). As such, the ALJ's finding on this point is not supported by substantial evidence.

Second, the ALJ gave little weight to plaintiff's claim that he would black out from pain if his left lower extremity were jarred because plaintiff testified that once he blacked out when his brother, Mr. McLees, drove over a pothole or speed bump, but Mr. McLees testified that plaintiff would "turn pale and curl up trying to hold his foot from being jarred." AR 22. This finding is not supported by reasonable inferences drawn from the record. While it would have been reasonable for the ALJ to find the testimony inconsistent if Mr. McLees testified that he had never seen plaintiff blackout, Mr. McLees was not asked this question. Rather, in response

REPORT AND RECOMMENDATION - 5

to being asked whether there was anything else he wanted the ALJ to know about plaintiff, Mr. McLees described how plaintiff normally responded while in the car: "Driving and whatnot, if he's in the car, even with me driving, if I hit, say a pothole or a speed bump, you can, depending on how big of a pothole or speed bump, you can quite literally see him go pale in the face and he's curled up in a ball trying to hold his foot to keep more harm." AR 68. On this record, the ALJ's inference was unreasonable.

Third, the ALJ also discounted plaintiff's alleged blackouts because plaintiff complained of blacking out to Dr. Parker but did not complain of this symptom to his treating providers or seek treatment for the alleged episodes. AR 22. Plaintiff contends this finding is not supported by substantial evidence because he alleged this symptom to Leslie Pilon, C.H.C.[3] ECF #14 at 9 (citing AR 1240 (treatment note from 2/14/12)). The Commissioner responds that the ALJ's finding was reasonable because Ms. Pilon is a mental health provider and plaintiff never mentioned blackouts to the medical providers who were treating the ankle condition that caused the blackouts. ECF #16 at 4. The Court agrees with the Commissioner. An ALJ may consider a claimant's unexplained or inadequately explained failure to seek treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), as well as a claimant's inconsistent or non-existent reporting of symptoms, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Here, even though plaintiff reported blackouts to Ms. Pilon, he did not seek treatment with the providers who were prescribing his pain medication and monitoring his ankle condition. At best, his reporting of blackouts to his treating providers was inconsistent, which is a valid reason to discount his credibility. *See Greger*, 464 F.3d at 972.

---

[3] Plaintiff mistakenly states he alleged blackouts to "Dr. Boynton," ECF #14 at 9, but the record establishes he made these statements to Ms. Pilon, *see* AR 1240-41.

REPORT AND RECOMMENDATION - 6

Fourth, the ALJ found plaintiff "claimed that he was unable to work because his obsessive compulsive symptoms would require him to rearrange other people's papers or furniture in the workplace if he saw that they were out of place" but discounted this allegation because plaintiff also reported "that his obsessive compulsive symptoms did not disrupt his functioning." AR 22. The ALJ, however, incorrectly summarized plaintiff's testimony. Although plaintiff testified to his obsessive compulsive symptoms, he did not claim they prevented him from working. *See* AR 55-56. Furthermore, in his benefits applications, he did not allege that his obsessive compulsive symptoms prevented him from working. *See* AR 89. As such, the ALJ's reliance on the alleged inconsistency between plaintiff's testimony and the record is not supported by substantial evidence.

Fifth, the ALJ found that plaintiff's reported activities were inconsistent with his claims of disability and "reflect[ed] the need for no greater restrictions than those set forth in the residual functional capacity."[4] AR 22-23. The activities cited by the ALJ include doing homework for his on-line classes, attending to personal care, taking medications, preparing meals, doing laundry and house straightening, driving, riding in a car, riding a bicycle for six or seven blocks, taking public transportation, shopping for food, handling finances, reading and drawing, and interacting daily with others. AR 22-23. More specifically, the ALJ found "it

---

[4] The ALJ assessed the following RFC:

> I find that the claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit for 6 hours in an 8-hour workday, and to stand/walk for 2 hours in an 8-hour workday, provided he has an hourly sit/stand option while staying on task. The claimant is unable to perform jobs that require use of the left lower extremity for pedal or foot control or jobs that require climbing of ladders, ropes, or scaffolds. He is able occasionally to climb ramps and stairs and occasionally to balance, stoop, kneel, crouch, and crawl. The claimant must be able to use a hand-held assistive device while walking or standing. He must avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and hazards. The claimant is able to perform simple routine tasks in work that involves occasional interaction with the public.

AR 15.

REPORT AND RECOMMENDATION - 7

difficult to understand how the claimant could ride a bicycle without jarring his foot—even if pedaling only with the right foot as he claimed in his testimony." AR 22. The ALJ also noted that plaintiff's use of public transportation showed that he had the "physical capability to ride the bus, which involves walking to stops, often standing at stops because not all stops have seats, and often walking to the end of the bus to find a seat." AR 24. The Court concludes that the ALJ properly relied on plaintiff's use of public transportation to find him less than fully credible because the physical capabilities required for riding the bus contradict plaintiff's testimony that he could not stand for more than five to ten minutes at one time. *See, e.g.*, *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (activities have a bearing on a claimant's credibility when they are inconsistent with the claimed limitations). Plaintiff's remaining activities, however, do not contradict his claimed limitations and therefore do not support the ALJ's adverse credibility finding. *See id.*

Finally, the ALJ relied on several inconsistencies in the record, including: (1) plaintiff and his brother gave inconsistent reports regarding plaintiff's video game playing; (2) plaintiff initially denied ankle trauma but later reported that he injured it running; (3) plaintiff had a messy rat, which is contrary to his concern regarding germs; (4) plaintiff stated in a function report that he took public transportation but also reported that he did not take buses because they are dirty; and (5) he inconsistently reported the fact that he is divorced and has a child. AR 22-24. An ALJ may consider inconsistencies in a plaintiff's statements or between a plaintiff's statements and his conduct. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The first two reasons the ALJ gave here, however, are not supported by substantial evidence. The Commissioner concedes substantial evidence does not support the ALJ's finding regarding video game playing, ECF #16 at 5, and the medical record establishes plaintiff consistently reported

REPORT AND RECOMMENDATION - 8

that his ankle initially began to hurt during a time when he was running frequently but he had no specific traumatic incident that precipitated his ankle condition, *see* AR 318, 323, 322, 340, 416, 438, 448, 1067.  The last three reasons the ALJ provided are supported by the record, but they relate to collateral issues not having to do with plaintiff's claim of disability and are not substantial evidence to discount the credibility of plaintiff's statements concerning the limitation caused by his impairments.

In sum, the ALJ gave two valid reasons for discounting plaintiff's credibility, namely that plaintiff did not report his blackouts to the medical providers who were treating his ankle condition and that plaintiff's use of public transportation established greater physical capabilities than he claimed.  These reasons are substantial evidence that support the ALJ's adverse credibility determination, and the invalid reasons provided by the ALJ do "not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).  Accordingly, plaintiff has not met his burden of establishing harmful error with respect to the ALJ's credibility determination.  *See id.* at 1111 (court cannot reverse where error is harmless and plaintiff must show that error is harmful).

II.     <u>The ALJ's Evaluation of the Lay Witness Evidence in the Record</u>

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly

REPORT AND RECOMMENDATION - 9

1 link his determination to those reasons," and substantial evidence supports the ALJ's decision.
2 *Id.* at 512.  The ALJ also may "draw inferences logically flowing from the evidence." *Sample*,
3 694 F.2d at 642.

4 Plaintiff's brother, Mr. McLees, testified at the hearing that plaintiff elevates his left leg
5 two to four times a day for 30 to 60 minutes; that he helps plaintiff carry groceries, do laundry,
6 cook, and navigate the mall in a wheelchair; that plaintiff has a problem with germs; and that two
7 to four times a month, plaintiff has a "bad day" and sits at his desk doing homework, naps after
8 taking pain medication, and then elevates his foot.  AR 27, 64-71.  The ALJ agreed with Mr.
9 McLees that plaintiff "is significantly limited by ankle pain, which also likely affects his
10 concentration on bad days."  *Id.* at 27.  The ALJ went on to find, however, "that his ability to
11 remain in school and the claimant's other regular activities, as discussed at length above, show
12 that he would be fully capable of sustaining on a regular and continuing basis in the workplace, if
13 limited as described in the residual functional capacity."  *Id.*

14 Plaintiff contends "the ALJ did not provide any reasons for rejecting [Mr. McLees's]
15 testimony," but rather said that he agreed with it.  ECF #14 at 12.  The Commissioner responds
16 that the ALJ agreed with Mr. McLees's testimony that plaintiff is limited by ankle pain but
17 offered a germane reason to discount the remaining testimony regarding plaintiff's need to
18 elevate his leg by finding that the testimony was contradicted by plaintiff's activities.  ECF #16
19 at 8 (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)
20 (inconsistency between a claimant's activities and a lay witness's statement is a germane reason
21 to discount lay witness testimony)).

22 The ALJ discounted Mr. McLees's testimony by finding it inconsistent with plaintiff's
23 ability to remain in school and pursue his regular activities, *see* AR 27, but this finding is not

REPORT AND RECOMMENDATION - 10

supported by the record.  As to school, plaintiff testified that he is enrolled in an online art school, takes one class at a time, and spends about one hour a day "actually working."  AR 44.  Contrary to the ALJ's finding, his ability to remain in school is not inconsistent with any of Mr. McLees's testimony.  For example, plaintiff would be able to spend an hour each day working on his online coursework and also elevate his leg two to four times a day for up to an hour.  As to daily activities, the ALJ found, among other things, that plaintiff cared for a pet rat, did homework unless pain was interfering with his concentration, attended to his personal care and medication regimen, prepared his own meals, cleaned his dishes, did laundry and house straightening, shopped for food and other items, handled his finances, enjoyed reading and drawing, spent time socializing, played Dungeons and Dragons, and traveled via car, bike, and public transportation.  AR 22- 23.  These activities, however, are not inconsistent with Mr. McLees's testimony, as summarized above.  As such, the ALJ failed to provide any reason "germane to [the] witness."  *Greger*, 464 F.3d at 972.  This error was harmful because the undersigned cannot say it was "inconsequential" to the ALJ's "ultimate nondisability determination."  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); *see also Molina*, 674 F.3d at 1115.[5]

---

[5] In *Molina*, the Ninth Circuit held that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."  674 F.3d at 1117 (finding that "[a]lthough the ALJ erred in failing to give germane reasons for rejecting the lay witness testimony, such error was harmless given that the lay testimony described the same limitations as [the claimant's] own testimony, and the ALJ's reasons for rejecting [that] testimony appl[ied] with equal force to the lay testimony").  Although Mr. McLees did not testify to any new limitations plaintiff had not already reported, the ALJ's only well-supported reasons for rejecting plaintiff's testimony—his failure to seek appropriate treatment for his blackouts and his use of public transportation—do not apply with equal force to Mr. McLees's testimony, which did not address blackouts or public transportation.  The court's holding in *Molina*, therefore, does not dictate a finding of harmless error in this case.

REPORT AND RECOMMENDATION - 11

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Plaintiff contends the Court should credit as true Mr. McLeeds's testimony that plaintiff needs to elevate his left leg throughout the day and remand for an immediate award of benefits because the vocational expert testified that he would be unable to work if he had to elevate his leg while at work. ECF #14 at 12-14. Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen*, 80 F.3d at 1292 (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required). Courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). Therefore, applying the "credit-as-true" rule "is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must

REPORT AND RECOMMENDATION - 12

be resolved before a proper disability determination can be made.'" *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)). On the other hand:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 593 (cited sources omitted).

Here, outstanding issues must be resolved before a disability determination can be made, and therefore it is inappropriate to credit Mr. McLeeds's testimony as true. Specifically, the ALJ must address the inconsistency between Mr. McLeeds's testimony regarding plaintiff's need to elevate his leg and the unchallenged medical opinion evidence, which does not appear to support this limitation. As such, remand for further proceedings is appropriate so the ALJ can reconsider Mr. McLeeds's testimony in the context of the entire record and reassess plaintiff's RFC as necessary.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985).

REPORT AND RECOMMENDATION - 13

Accommodating the time limit imposed by Rule 72(b), the clerk is directed set this matter for consideration on **February 28, 2014**, as noted in the caption.

DATED this 10th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14